*In re* ESTATE OF JOSEPH ROLLINS, Deceased (Delores McGee, Petitioner-Appellant, v. La Salle National Bank, a/k/a La Salle National Trust, N.A., *et al.*, Respondents-Appellees).

First District (6th Division)   Nos. 1—91—4104, 1—93—1415 cons.

Opinion filed January 20, 1995.—Rehearing denied February 16, 1995.

David A. Bridewell, of Chicago, for appellant.

Bruce R. Lange, of Lange & Lange, of Chicago, for appellee La Salle National Bank.

JUSTICE EGAN delivered the opinion of the court:

After a bench trial, the judge denied the petitioner's claims against her half-brother's estate for care during his lifetime. On appeal, the petitioner, Delores McGee, asserts that the judge erred (1) when, based on the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)), he refused to allow her testimony as to her care of her brother and his physical and mental condition; (2) he denied her statutory custodial claim under the Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110$^{1}$/$_{2}$, par. 1—1 *et seq.* (now 755 ILCS 5/1—1 *et seq.* (West 1992))); (3) he denied her claim under the theory of *quantum meruit*; and (4) he allowed impeachment testimony on collateral matters.

On April 3, 1990, the petitioner filed a petition in which she asked the judge to issue letters of administration to La Salle National Bank (La Salle) for her half-brother Joseph Rollins' estate. (La Salle's predecessor, the Exchange National Bank, had been appointed Joseph's guardian in November 1957. La Salle succeeded the Exchange National Bank in November 1980.) The petitioner signed an affidavit of heirship prepared by La Salle's attorneys. In her affidavit, she stated that she was the decedent's sole heir. The judge issued an order declaring her the decedent's sole heir. In April 1990, La Salle published notice of the decedent's death and the administration of his estate in the Chicago Daily Law Bulletin. This notice stated that creditors of the estate must file their claims before October 10, 1990.

On September 4, 1991, Edward Rollins, the decedent's brother; Demetris Rollins, the son of the decedent's other brother, Charles Rollins; and Margo Walker, Charles Rollins' daughter, filed a motion to amend heirship. Pursuant to this motion, the judge entered an amended order declaring that the heirs of the decedent were the petitioner, Edward Rollins, Demetris Rollins and Margo Walker.

On October 4, 1991, the petitioner filed a claim against the decedent's estate for $80,000. In a statement attached to this claim, she asserted the following. Her brother was a totally disabled veteran.

She was a licensed practical nurse and provided nursing care, room and board for her brother beginning October 1, 1979, after their mother's death. Her brother required care 24 hours a day due to his physical and mental problems. He suffered from diabetes, hypertension, arthritis and incontinence. In addition, his five right toes and left lower leg had been amputated in 1987. She provided him with transportation, a room, personal care, clothing and meals. Her teenage sons also helped with his care when the petitioner was working. Each year, someone from the Veteran's Administration (V.A.) came to the petitioner's house to evaluate the decedent's care and environment.

For the first six years that she cared for Joseph, his guardian, La Salle, paid her $450 per month. (She had been named the guardian of Joseph's person.) In 1986, she wrote La Salle to ask for an increase in this monthly amount because she could no longer afford to care for her brother with the amount La Salle had been paying her. La Salle increased the monthly amount to $925 plus $40 for transportation, but informed the petitioner that this was the maximum amount it could pay her because it could not pay her more per month than it received from the V.A., minus deductions for Joseph's personal needs and transportation. In addition to other expenditures for the decedent's care, the petitioner purchased an electric recliner for him and repaired water damage caused by him.

On October 22, 1991, the petitioner filed a motion to excuse the delayed filing of her claim against the estate, and, on November 26, 1991, she filed a memorandum in support of her motion. She explained that the decedent was designated totally disabled by the V.A. and that La Salle, as his guardian, paid her from the decedent's V.A. benefits for his care and maintenance.

The petitioner explained her delay in filing her claim against the decedent's estate after he died on February 9, 1990. She believed that she would inherit the decedent's entire estate because she took care of him for 11 years without the assistance of any of his other heirs and because a V.A. inspector had told her that she would inherit the decedent's estate upon his death. In addition, La Salle never sent her a notice that she might be entitled to file a claim against the decedent's estate. Based on her care of the decedent, her lack of personal legal representation and her minimal contact with the other heirs (she had been raised in a foster family), she signed the affidavit stating that she was the decedent's sole heir.

The petitioner also asserted that La Salle received $100 per month in guardian or trustee fees; La Salle was asking for $3,800 in administrator fees; and its attorneys were asking for fees and expen-

ses of $4,208. La Salle's attorneys proposed that the remaining $95,893.56 in the estate be distributed as follows: one-sixth each to the petitioner and Edward Rollins and one-third each to Demetris Rollins and Margo Walker.

On October 22, 1991, the judge issued an order regarding the petitioner's motion to excuse the delayed filing of her claim. He stated that the petitioner's knowledge of other heirs was determinative concerning her right to file her claim. On November 26, 1991, the judge entered an order that the petitioner's claim was time-barred because signing the petition for letters of administration gave her actual notice of the estate administration. We construe this order to be one dismissing her claim.

On December 5, 1991, the petitioner filed a motion to dismiss the probate estate for lack of jurisdiction or for reconsideration of the November 26, 1991, order. On December 20, 1991, the petitioner filed a notice of appeal from the judge's orders of October 22 and November 26. The appeal from these orders is No. 1—91—4104 in this court.

While the appeal in No. 1—91—4104 was pending, on May 14, 1992, the judge vacated the order of November 26, 1991. He decided that the petitioner's claim was not time-barred because she was a reasonably ascertainable claimant, but he nevertheless barred her claim for services rendered and expenses incurred during the decedent's lifetime because, he said, she should have asserted these claims in the guardianship proceeding rather than against the decedent's estate. On June 2, 1992, the judge reconsidered this order *sua sponte.* He vacated the portion of the May 1992 order that stated the petitioner's claim was barred, in effect reinstating her claim. The June 2 order makes the petitioner's appeal in No. 1—91—4104 moot, and that appeal is dismissed.

On August 14, 1992, the petitioner filed an amended claim against the estate. In count I, the petitioner asserted that she was entitled to $125,000 for services she rendered to the decedent and personal funds she expended for his care. In count II, the petitioner asserted a statutory custodial claim for $125,000 under section 18—1.1 of the Probate Act of 1975 (the Act) (Ill. Rev. Stat. 1989, ch. 110$^1$/$_2$, par. 18—1.1 (now 755 ILCS 5/18—1.1 (West 1992)). La Salle filed an answer which included two affirmative defenses, one of which was a claim that section 18—1.1 of the Act was unconstitutional. The record does not contain an answer to the amended claim filed by the heirs. After a trial in which La Salle and the heirs participated in the defense, the judge denied both counts of the petitioner's claim. Appeal No. 1—93—1415, which we consolidated with the now-dismissed appeal No.

1—91—4104, is from the order denying the petitioner's two-count claim.

We will first consider the petitioner's argument that the judge erred in applying the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)) to exclude her testimony concerning the extent of her care of the decedent and his physical and mental condition. The petitioner presented the testimony of three witnesses: herself; Karen Cook, a paralegal who prepared a compilation of the guardian's accounts for the 10 years before the decedent's death; and Marshall Horsman, an expert who testified about the costs of nursing services and nursing homes.

The judge substantially limited the testimony of the petitioner's witnesses pursuant to the respondents' objections under the Dead-Man's Act. The judge admitted Cook's compilation of the accounts subject to the respondents' objections as to any content referring to the care the petitioner provided to the decedent. The judge similarly limited Horsman's testimony. Horsman was prepared to testify to the value of the petitioner's services in caring for the decedent, but after *voir dire* by the respondents, the judge ruled that Horsman could only testify in a hypothetical manner. During *voir dire*, Horsman admitted that his opinion of the value of the petitioner's services was based on information he had received from the petitioner herself.

The respondents also objected to the petitioner's testimony that the decedent had lived with her and that she had cared for him. The trial judge sustained most of these objections, but some testimony was allowed to stand:

"MR. BRIDEWELL [representing the petitioner]: Did anyone else share the home with you there in Pomona?

A. Anyone else other than Joseph?

MR. LANGE [representing La Salle]: Objection move to strike.

THE COURT: She may refer to him.

\* \* \*

A. Yes, I lived with my children. I have five children along with Joseph.

\* \* \*

Q. When did you start taking care of Joseph?

MR. KOGUT [representing the heirs]: Objection, Your Honor, Dead Man's Act.

THE COURT: I think it's a general question. I will allow it.

THE WITNESS: I started to care for Joseph in 1979 in August. I mean, I am sorry, October of 1979 through February of 1990.

MR. KOGUT: Again, Your Honor, I renew the objection.

MR. BRIDEWELL: If the Court please, do you know when Joseph died?

A. Yes.

Q. He died February the 9th, I believe, 1990.

Q. I show you what has been identified as a document, his death certificate. Is that a copy of the same?

A. Yes.

Q. What is your answer?

A. Yes.

Q. Prior to his death how long did you take care of or how long did he live with you?

MR. KOGUT: Objection, Your Honor. Again Dead Man's Act. This witness cannot testify to any occurrence—

THE COURT: Sustained."

The judge also sustained objections to the petitioner's testimony about the decedent's physical condition, although he accepted a stipulation to the authenticity of a document indicating that the decedent was discharged from the military due to disability. The document does not contain a description of the disability.

Pursuant to a discussion with the petitioner's attorney, the respondents also stipulated as follows to the admissibility of the guardian accounts of La Salle:

"MR. LANGE [representing La Salle]: Your Honor, pursuant to a discussion with Mr. Bridewell [representing the petitioner] yesterday, I indicated that I would stipulate to the admission of the current accounts that were filed in the guardianship proceeding that was pending in the Circuit Court of Cook County ***. For the purposes of the accounts—acknowledging that the accounts have been filed and are part of that Court record, but not with regard to the content or any specific matter. Merely for the purpose of allowing them to be testified about.

MR. KOGUT [representing the heirs]: Judge, on behalf of the heirs I will stipulate that based on Mr. Lange's representation that these are the current accounts that were filed. However, relative for admissibility I question what relevancy this has in the pending matter as far as offering them as evidence. That is my only question.

* * *

THE COURT: There is a stipulation that they are admissible."

These accounts indicated payments to the petitioner for "ward care," "room and board of ward" and "care and maintenance of ward." The petitioner also introduced a letter to the petitioner in which La Salle stated the following:

"Your request for the increase in the monthly care payments

must be approved in court by the judge. *** However, although we have built up the account to approximately $57,000.00 we are not allowed to pay out more than we receive monthly. *** After deducting $200.00 for Joseph's personal needs and the $40.00 for transportation we would be able to send a maximum of $925.00 per month for his care."

La Salle presented no witnesses. However, it did enter as exhibits the petitioner's tax returns for 1989 and 1990. On each of these tax returns, the petitioner claimed four individuals as dependents and claimed approximately $19,000 in income. It also entered into evidence letters from the petitioner to La Salle in which she requested several increases in the monthly payment for her brother's care. Margo Walker and Demetris Rollins testified on behalf of the heirs concerning the petitioner's knowledge of other heirs. The purpose of their testimony was to impeach the petitioner, who argues here that the impeachment was on an immaterial matter.

■ Initially, we reject the respondents' argument that, by failing to make an offer of proof, the petitioner waived her objection to the judge's exclusion of her testimony regarding the decedent's care and physical and mental condition. The respondents correctly argue that, in order to preserve for review an objection concerning a judge's exclusion of testimony, an offer of proof is necessary. (See *People v. Andrews* (1992), 146 Ill. 2d 413, 588 N.E.2d 1126.) However, there is no waiver if the substance of the excluded evidence is clear. (See, *e.g., People v. Lynch* (1984), 104 Ill. 2d 194, 470 N.E.2d 1018.) In this case, there was ample evidence in the record of the excluded testimony concerning the decedent's care and disability. For example, the original claim explains the petitioner's care of the decedent and his condition in great detail. The petitioner, therefore, did not waive this argument for review.

Section 8—201 of the Dead-Man's Act provides:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." (735 ILCS 5/8—201 (West 1992).)

As a party suing the representative of the decedent's estate, the petitioner could not testify to conversations with the decedent or events in his presence. The petitioner does not argue that her excluded testimony concerning the decedent's care, condition and

residence was not within the scope of the Dead-Man's Act.[1] Instead, the petitioner argues that she was competent to testify to these matters under the following exception to the Dead-Man's Act:

> "(a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event." (735 ILCS 5/8—201(a) (West 1992).)

La Salle called no witnesses to testify on its behalf, but the petitioner contends that La Salle opened the door for her testimony about the deceased's care and physical condition by stipulating to the admissibility of documents she offered that contain references to these matters, such as the guardian accounts.

■ Even assuming that La Salle stipulated to the admissibility of these documents without limitation, it did not waive the protection of the Dead-Man's Act. We cannot expand the language of the Dead-Man's Act to provide an exception when the representative merely allows the adverse party to enter *exhibits* which contain references to an event in the decedent's presence. *Cf. Hoem v. Zia* (1992), 239 Ill. App. 3d 601, 606 N.E.2d 818 (holding that the Dead-Man's Act does not provide an exception when the representative merely introduces notes of a conversation); *aff'd* (1994), 159 Ill. 2d 193, 636 N.E.2d 479 (but holding that the exception to the Dead-Man's Act applied because the representative also introduced testimony that elaborated on the notes it introduced).

■ The petitioner also argues that "there is a question as to whether Subsections [*sic*] (b) or (c) of ILCS § 5/8—401 would not override the prohibitions of the Dead Man's Act."[2] Subsections (b) and (c) do not support her position. Section (b) provides an exception when the representative introduces the deposition of the decedent. There was no such deposition in this case. Section (c) provides an exception for any testimony competent under section 8—401 of the Code of Civil Procedure (735 ILCS 5/8—401 (West 1992)), which deals with account

---

[1]Despite the petitioner's concession, we have some question of whether the petitioner's condition was an "event" within the meaning of section 8—201. (See 97 C.J.S. *Witnesses* § 220 (1957).) In addition, there is authority that testimony that the witness resided with the decedent is not barred. *Hartman v. Townsend* (1988), 169 Ill. App. 3d 111, 523 N.E.2d 199.

[2]We assume that the petitioner means section 8—201, which is the Dead-Man's Act; section 8—401 refers to admissibility of account books and records; there are no subsections of section 8—401.

books and records. The petitioner's excluded testimony does not fall within section 8—401. The petitioner did not offer her testimony to lay a foundation for the admission of her own records; she attempted to elaborate on the contents of La Salle's records, which she introduced. The judge, therefore, properly concluded that the "records of respondent guardian of the estate, La Salle Bank, do not take this matter out of Section 2 of the Dead Man's Act and open the door to all testimony."

While the modern trend is to remove the disqualification of the Dead-Man's Act because the unjust results of its application often outweigh its protections (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 606.2, at 315 (5th ed. 1990)), the Dead-Man's Act was only partially responsible for the plaintiff's difficulty in proving her claims here. The Dead-Man's Act does not prohibit testimony of events or conversations in the decedent's presence by individuals who are neither adverse parties nor directly interested in the action. (See, *e.g.*, *Bernardi v. Chicago Steel Container Corp.* (1989), 187 Ill. App. 3d 1010, 543 N.E.2d 1004 (son of claimant not an incompetent witness under the Dead-Man's Act).) In this case, employees of La Salle, at least one V.A. inspector and the petitioner's children were involved in the decedent's care to some extent or witnessed his condition, yet the only witness the plaintiff called with personal knowledge of these matters was herself.

We turn now to the sufficiency of the evidence to support the petitioner's claim that she was entitled to recover under section 18—1.1 of the Probate Act of 1975, which provided:

"Any spouse, parent, brother, or sister of a disabled person who dedicates himself or herself to the care of the disabled person by living with and personally caring for the disabled person for at least 3 years shall be entitled to a claim against the estate upon the death of the disabled person. The claim shall take into consideration the claimant's lost employment opportunities, lost lifestyle opportunities, and emotional distress experienced as a result of personally caring for the disabled person. The claim shall be in addition to any other claim, including without limitation a reasonable claim for nursing and other care. The claim shall be based upon the nature and extent of the person's disability and, at a minimum but subject to the extent of the assets available, shall be in the amounts set forth below:

1. 100% disability, $100,000
2. 75% disability, $75,000
3. 50% disability, $50,000
4. 25% disability, $25,000."

Ill. Rev. Stat. 1989, ch. 110$^{1}$/$_2$, par. 18—1.1 (now 755 ILCS 5/18—1.1 (West 1992)).

In denying the decedent's claim, the judge held that section 18—1.1 required that a claimant "must give full-time service to even qualify as a claimant." He relied on *In re Estate of Hoehn* (1992), 234 Ill. App. 3d 627, 600 N.E.2d 899. We can understand how the trial judge might have interpreted *Hoehn* to mean that full-time service is required. The *Hoehn* court said:

"We agree with the circuit court that a fair reading of the statute would lead to the conclusion that the factors to be considered in determining dedication are those listed in the statute itself: lost employment opportunities, lost lifestyle opportunities, and emotional distress experienced from caring for the disabled person. [The claimant] was already retired in 1979 and therefore did not lose any employment opportunities. Additionally, it does not appear that her lifestyle changed significantly while living across from her sister. [The claimant] did testify to suffering from emotional distress, but that distress was related to watching her sister die. Hoehn did not die until almost six years after the relevant time period in this case. [The claimant's] testimony does not reveal emotional distress suffered as a result of caring for her sister." *Hoehn*, 234 Ill. App. 3d at 630.

We agree that whether a claimant suffered loss of employment opportunities or lifestyle opportunities or emotional distress is probative, but we do not read the statute to mean that a claimant may not recover in the absence of those factors. And we do not agree that a claimant must show "full-time service."

The statute does not define what constitutes "dedication" beyond "living with and personally caring for the disabled person for at least 3 years." Although we agree that the judge properly excluded at least the testimony of the petitioner concerning her care of the decedent, we believe there is support in the record for a finding that the decedent was disabled and that she "cared" for him for three years.

This is a confusing record. The original claim filed by the petitioner had attached a statement which recited that her brother was totally disabled; that he suffered from various physical ailments including diabetes; that he required care 24 hours a day due to physical and mental problems; that five toes of his right foot and his left lower leg had been amputated; that she was a licensed practical nurse who provided the decedent with transportation, a room, personal care, clothing and meals; and that her teen-age sons helped her with his care when she was working.

The record does not contain any answer to that claim. Instead, the respondents sought to dismiss the claim on the ground it was time-barred. The judge first dismissed the claim on that ground and

subsequently reversed himself. (The respondents do not challenge the judge's permitting the petitioner to file a claim.) The petitioner subsequently filed an amended claim which alleged that the decedent was totally disabled from November 13, 1957, until his death; and that from September 19, 1979, until the decedent's death, the petitioner provided health care for the decedent and expended personal funds in his care.

La Salle filed an answer in which it denied those allegations of the amended claim "as stated." The answer also asserted two affirmative defenses. The first alleged that the petitioner had received all that she was entitled to pursuant to a court order in the decedent's guardianship proceeding; that the decedent, as a disabled person, was unable to enter into a contract; that neither the decedent nor La Salle had entered into a contract with the petitioner for the care or maintenance of the decedent; and that "no further sums [were] due to" the petitioner. The second affirmative defense was, as noted, a challenge to the constitutionality of the statute. La Salle alleged that the statute violated the due process clause of the Illinois Constitution. We assume that La Salle was alleging that the statute was void for vagueness. The judge ultimately held that the statute was constitutional. The respondents do not challenge this holding.

The original claim was unverified by the petitioner; indeed it was unsigned. Consequently, by filing the amended claim, the petitioner abandoned the original claim. (*Adamcyzk v. Forest Preserve District* (1986), 151 Ill. App. 3d 320, 502 N.E.2d 1197.) Under the state of the pleadings at the time of trial, therefore, the petitioner had to prove at least 25% disability on the part of the decedent to recover under the statute and to prove that she had "dedicated" herself to caring for the decedent.

The judge took judicial notice of the proceeding "in the disabled person's estate" in which the petitioner had been named the guardian of her brother's person and La Salle was the guardian of his estate. At the June 2 hearing, the judge referred to an order entered in the "disabled person's estate" granting the petitioner money "for services rendered in the health care and for the decedent as a disabled person."

At another hearing, the judge asked the attorney for the heirs what the petitioner had received money for; the attorney for the heirs said she received money for "caring for the ward." Later he said "she was paid for her services." The attorney for La Salle said she was "receiving substantial sums of money for the care of the ward." La Salle said in its first affirmative defense that the decedent had been adjudicated a disabled adult. The petitioner later testified

on cross-examination by La Salle that her brother resided with her from 1979 until his death. La Salle's records show that it was paying the petitioner over a period of several years for "ward care," "room and board of ward," and "care and maintenance of ward." Last, the decedent had been granted a disability discharge from the Armed Forces. The fact that the petitioner was the guardian of the person of the decedent leads to the conclusion that he resided with her.

We conclude that the record, independent of the excluded testimony, establishes that the decedent was disabled to some extent; that he lived with her for at least three years; and that she provided him with "care" to some extent. But we do not believe that she provided the proof required under the statute, which we recognize is not as clear as it could be. Claimants need not show that they spent every waking moment tending to the needs of the disabled person, but they must show more than the fact that they "cared" for the disabled person. They must also show that the required care was extended to a person who was at least 25% disabled. The petitioner has not shown that either. For these reasons, we conclude that the judge properly denied the petitioner's claim under the statute.

In view of our holding, we need not address the respondents' argument that the statute was not intended to cover cases like this one where the claimant was already receiving compensation as a result of a judicial appointment.

■ We also believe the judge was correct in denying her additional claim for services and expenses under an implied contract theory. A claimant has the burden of proving a contract with or obligation against the estate and courts will scrutinize claims against the estate with care. (*In re Estate of Likes* (1972), 6 Ill. App. 3d 976, 286 N.E.2d 65.) A claimant may show an implied contract through circumstances, such as a course of dealing, that indicate the parties intended a contract. To establish a contract, a claimant must have expected to receive payment at the time he rendered services, and the other party must have expected to make payment. (*Likes*, 6 Ill. App. 3d at 978-79.) There is no evidence that the decedent or La Salle must have expected to make payment to the claimant other than the payments she was receiving as the appointed guardian. In fact, the payments she was receiving are strong evidence against the existence of an implied contract.

Even if a contract were implied from the monthly payments to petitioner from La Salle for the decedent's care, there is no evidence that La Salle intended to pay the petitioner more for these services than it actually paid her (*cf. In re Estate of Pomeroy* (1974), 21 Ill. App. 3d 648, 316 N.E.2d 231), nor is there competent evidence that

the petitioner performed services for the decedent beyond those for which she was paid (see *Likes*, 6 Ill. App. 3d at 979 (denying a claim against an estate when the claimant presented testimony of the hourly rate for house cleaning, but failed to prove the number of hours she worked)).

Because we conclude that the petitioner failed to establish her right to recovery under the theories she advanced, we need not discuss the propriety of the judge's ruling on the admission of her tax returns and the testimony of two of the heirs.

Appeal No. 1—91—4104 is dismissed; in appeal No. 1—93—1415, the judgment is affirmed.

No. 1—91—4104, Dismissed.
No. 1—93—1415, Affirmed.

RAKOWSKI and ZWICK, JJ., concur.