NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231100-U

NO. 4-23-1100

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 16, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BENJAMIN M., | ) | Appeal from the |
|     Petitioner-Appellant, | ) | Circuit Court of |
|     v. | ) | McDonough County |
| DANNIE Z., | ) | No. 23OP75 |
|     Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | Raymond A. Cavanaugh, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's dismissal of the petition for a plenary order of protection.

¶ 2    In June 2023, petitioner, Benjamin M., filed a verified petition for an order of protection, seeking to prohibit respondent, Dannie Z., from having contact with their two minor children, W.G.M. (five years old) and D.B.M.-Z. (seven years old). At the close of petitioner's evidence at the plenary hearing, respondent moved for a directed finding, which the trial court granted. Petitioner appeals, arguing the court erred in granting the directed finding and dismissing the petition. For the following reasons, we affirm the court's judgment.

¶ 3                                  I. BACKGROUND

¶ 4                          A. Petition for an Order of Protection

¶ 5            Petitioner, Benjamin M., and respondent, Dannie Z., were previously married. They have two children together: W.G.M. and D.B.M.-Z. Under the parenting plan, respondent was given sole authority to decide significant medical and educational issues relating to the children. Petitioner was provided access to the children's medical and school records, and he could obtain this information directly from the medical providers or school personnel. As to parenting time, respondent had primary custody of the children, and petitioner had visitation on three out of four weekends and two floating weekdays per month, with split holidays.

¶ 6            In June 2023, petitioner filed a verified petition for an order of protection in Schuyler County on behalf of himself and the children. The petition alleged, after W.G.M. spilled his food, respondent kicked him in the genitals and buttocks with enough force to cause him to fall down and cry. The petition further alleged respondent bent W.G.M. over the corner of a couch before spanking him.

¶ 7            Following a hearing, the trial court entered an emergency order of protection. The court ordered respondent to have no communication with and to stay at least 1000 feet away from petitioner and the children at all times. Thereafter, respondent filed a motion to transfer venue to McDonough County (the county where the parties' divorce proceedings occurred), which the court granted.

¶ 8                              B. Plenary Hearing

¶ 9            In August 2023, a plenary hearing commenced in McDonough County. The trial court, by stipulation of the parties, entered a forensic interview of W.G.M. into evidence.

¶ 10           Petitioner testified W.G.M. and D.B.M.-Z. were at his home for a weekend visit in June 2023. During dinner on a Friday, W.G.M. told petitioner and his current wife, Lauren M., about the incident with respondent. According to petitioner, W.G.M. stated respondent, in

response to W.G.M. spilling food, kicked the child in the genitals and buttocks and bent the child over a couch before spanking him. Petitioner noted when he and Lauren asked W.G.M. about the incident on the following Sunday, the child told them "the exact same story." This was the first time the child had told petitioner about any alleged physical abuse by respondent.

¶ 11     Petitioner reported the incident to the Schuyler County police. The police then contacted the Illinois Department of Children and Family Services (DCFS). Approximately a week and a half later, W.G.M. participated in a Child Advocacy Center forensic interview regarding the incident.

¶ 12     The emergency order was amended in July 2023 to permit supervised visitation between respondent and the children. Petitioner testified the children told him and Lauren the visitation supervisor allowed respondent to be alone with the children, at which time respondent told the children the incident "didn't happen." Petitioner also testified the children told him the supervisor allowed them to be alone with respondent at a gas station and while playing at a park. However, petitioner did not report the alleged violations to the trial court or a supervisor. Petitioner indicated he raised the alleged violations with the DCFS caseworker.

¶ 13     Petitioner testified Lauren made a report against respondent to DCFS in March 2023, alleging medical neglect, environmental neglect, and burns by neglect for both children, but the report was later determined to be unfounded. From January to February 2020, petitioner raised concerns of neglect to a doctor, who reported respondent to DCFS. None of the reports resulted in any investigation.

¶ 14     After the filing of the petition, petitioner enrolled the children in a different school and took them to dental and medical examinations. He also scheduled an appointment with a pediatric urologist for W.G.M. to address ongoing pain issues.

¶ 15    Dr. Jackson Canter, a dentist at Beardstown Family Dental, testified he treated D.B.M.-Z. in June 2023. At the appointment, Dr. Canter took X-rays and performed a dental cleaning and tooth extraction. Dr. Canter removed D.B.M.-Z.'s primary molar (*i.e.*, a baby tooth), due to the child experiencing pain, a bad smell, and a cavity underneath the existing filling. However, Dr. Canter did not observe any abscesses in the child's mouth. He also did not see any indication of abuse or neglect. Dr. Canter did not know petitioner did not have medical decision-making authority over D.B.M.-Z.

¶ 16    Angie Westlake, a DCFS investigator, testified on respondent's behalf. She conducted two DCFS investigations into allegations against respondent—the March 2023 investigation and the present investigation. Westlake stated all reports were unfounded and both investigations were closed. As to the March 2023 investigation, Westlake found the children's burns were due to accidents. Westlake also spoke with D.B.M.-Z.'s school, who confirmed the child received dental care through a school program. Respondent was aware the child had an abscessed tooth at the time and was on a waiting list to see a dentist.

¶ 17    Westlake noted she knew respondent prior to the investigation, as she hired respondent through text message on one occasion to clean her home. She raised this with her supervisor, who determined it was not a conflict of interest which would preclude Westlake from investigating respondent.

¶ 18    At the close of petitioner's evidence, respondent moved for a directed verdict. The trial court granted the motion and dismissed the petition.

¶ 19    This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21    On appeal, petitioner contends the trial court erred by granting respondent's motion for a directed finding and dismissing the petition for a plenary order of protection.

¶ 22    As a preliminary matter, we note respondent has not filed an appellee's brief. "A reviewing court is not compelled to serve as an advocate for the appellee and is not required to search the record for the purpose of sustaining the trial court's judgment." *Benjamin v. McKinnon*, 379 Ill. App. 3d 1013, 1019 (2008). However, "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Because the primary issue in this appeal is whether the court erred in dismissing the petition for an order of protection, we conclude we can determine the merits of this appeal without an appellee's brief.

¶ 23                          A. Standard of Review

¶ 24    At the close of petitioner's evidence, the trial court purported to grant respondent's motion for a "directed verdict." However, a directed verdict is not possible where the trier of fact is a judge rather than a jury. *Barnes v. Michalski*, 399 Ill. App. 3d 254, 262 (2010). Respondent was actually moving for a directed finding, pursuant to section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2022)). *Barnes*, 399 Ill. App. 3d at 262. We note this distinction, as a motion for a directed verdict, versus a motion for a directed finding, raises "different questions and require[s] different analyses." *Id.*

¶ 25    The trial court performs a two-step analysis when determining whether to grant a respondent's motion for a directed finding. *In re Estate of Etherton*, 284 Ill. App. 3d 64, 67 (1996). In the first step, the court determines whether the petitioner has established a *prima facie* case. *Id.* "In other words, the court determines, as a matter of law, whether the [petitioner] has

presented at least some evidence on every element of the cause of action." *Barnes*, 399 Ill. App. 3d at 263. If the petitioner fails to do so, the court should grant the respondent's motion. *Id.* But, if the petitioner has made out a *prima facie* case, the court should proceed to the second step. *Id.* at 263-64.

¶ 26 In the second step, the trial court weighs the evidence and assesses the credibility of the witnesses under the applicable burden of proof. *Id.* at 264. If the court finds "the [petitioner]'s evidence is unconvincing as it stands, even without the presentation of any evidence by the [respondent], the court should grant the [respondent]'s motion for judgment." *Id.* However, "if the weighing process does not negate any element of the *prima facie* case, the court should deny the [respondent]'s motion and continue with the trial." *Id.*

¶ 27 Our standard of review depends on which of the two stages the trial court reached when it granted respondent's motion for a directed finding. *Id.* If the court granted respondent's motion during the first step of its analysis, our standard of review is *de novo*. *Id.* If the court granted respondent's motion during the second step, "we ask whether the ruling was against the manifest weight of the evidence." *Id.* A ruling is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the ruling is unreasonable, arbitrary, or not based on any evidence in the record. *Id.* at 264-65.

¶ 28 Here, in granting respondent's motion, the trial court remarked, "[I]n the light most favorable to the petitioner, there's not a basis to issue a plenary order of protection and to go further and to shift the burden." Thereafter, the court articulated its consideration of the evidence presented, including the medical and dental evidence, the prior DCFS reports, and W.G.M.'s forensic interview. From these statements, we infer the court granted respondent's motion based on its weighing of the evidence, and not based on a failure of petitioner to present

evidence on one or more of the elements required for a *prima facie* case. Therefore, we will determine whether the court's ruling was against the manifest weight of the evidence.

¶ 29                                    B. Order of Protection

¶ 30         In a proceeding to obtain an order of protection, the trial court's "central inquiry is whether the petitioner [or the minor child] has been abused." *Best v. Best*, 223 Ill. 2d 342, 348 (2006). The Illinois Domestic Violence Act of 1986 (750 ILCS 60/103(1) (West 2022)) defines abuse as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or person *in loco parentis*." A petition for an order of protection may be filed "by any person on behalf of a minor child." *Id.* § 201(b)(i). Whether a petitioner or a minor child has been abused is a question of fact the petitioner must prove by a preponderance of the evidence. *Best*, 223 Ill. 2d at 348. This court will not substitute our "judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *Id.* at 350-51.

¶ 31         Here, the trial court's determination was not against the manifest weight of the evidence. Although W.G.M. recounted the alleged incident with respondent during his forensic interview, the court, after hearing the evidence and observing the witnesses, found there was no evidence corroborating the child's statements. In particular, the court noted DCFS determined the related neglect report against respondent was unfounded. This was also not the first time an allegation against respondent was not substantiated. In March 2023, petitioner's current wife made a neglect report against respondent to DCFS, which was also determined to be unfounded. Based on this record, we cannot say the opposite conclusion is clearly evident, nor that the

court's decision was unreasonable, arbitrary, or not based on any evidence. *Stapp v. Jansen*, 2013 IL App (4th) 120513, ¶ 16.

¶ 32    Accordingly, the trial court's decision was not against the manifest weight of the evidence.

¶ 33                         III. CONCLUSION

¶ 34    For the reasons stated, we affirm the trial court's judgment.

¶ 35    Affirmed.