**In the Matter of the Estate of Antonio Dal Paos, Deceased.**

**Gen. No. 69–36.**

Fifth District.
December 22, 1969.

Daniel G. Reese, of Taylorville, and Vernon H. Houchen, of Decatur, for appellants.

Robert D. McWard, of Taylorville, for appellee.

MORAN, P. J.

Claimant, Anna DeRochi, filed a claim in the Probate Division of the Circuit Court of Christian County against the estate of Antonio Dal Paos for services rendered to the decedent during his illness for the five years immediately preceding his death. The legatees under the will of decedent objected to the claim, and after a trial without a jury, judgment was entered for claimant for $6,500, plus costs, from which the legatees appeal.

Claimant had been acquainted with decedent prior to her husband's death in 1936. In 1942, decedent moved into her home on West Third Street in Taylorville, Illinois, where he lived until 1952, paying $16 per week for room and board. At that time claimant and decedent purchased a home together on Pawnee Street in Taylorville. Each paid one-half of the $6,600 purchase price and the title was placed in joint tenancy with right of survivorship. From that time until the death of Antonio Dal Paos, each paid one-half of all expenses incurred, including bills for real estate taxes, utilities and groceries. During this period claimant did all the housework, cooking and laundry and helped with the yard work. Decedent did some yard work except for the last two years, when because of his age and illness he was unable to help, even though he could walk without a cane. He died at the age of eighty-four.

The record shows that decedent had prostate trouble and a bad heart, and although he was hospitalized only

once for one week, his condition caused claimant to perform additional laundry and nursing duties during the last five years, and more so during the last two, as decedent's physical condition rapidly deteriorated. Because of his prostate trouble, it was necessary to change the sheets on his bed each morning. The reasonable value of these services was shown to be $40 to $50 per week; however, the claim is for only $25 per week. No one else helped care for the decedent. Several neighbors testified that they saw claimant doing laundry and housework on many occasions.

Claimant testified that on many occasions decedent told her, "You take care of me and I take care of you. If I die, I leave for you everything." A neighbor who had known claimant and decedent for over forty years testified that decedent told her that claimant would never have to worry and that he would take care of her. At no time did claimant present a bill to decedent or demand payment for her services.

The trial court found that there was an implied contract between decedent and appellee for services, that the services were rendered, that they were not paid for, that the decedent intended they should be paid for, that appellee did not intend that the services should be gratuitous, and that the proof of value of services was within the amount demanded.

Appellants contend that since claimant and decedent lived alone together for sixteen years a family relationship existed, and therefore the services rendered are presumed to be gratuitous, and that there are no facts or circumstances to support an inference that both parties contemplated payment for claimant's services which would rebut that presumption.

■ As stated in Heffron v. Brown, 155 Ill 322, 326, 40 NE 583:

"Where services are rendered by one admitted into the family as a relative, the presumption of law

is that such services are gratuitous, and that the parties do not contemplate the payment of wages therefor. This presumption, however, may be overcome by proof. The proof necessary to overcome the presumption may be either of an express contract, or of a contract established by such facts and circumstances as show that both parties, at the time the services were rendered, contemplated or intended pecuniary recompense other than that which arises naturally out of the family relation."

■ However, we do not believe that a family relationship existed between claimant and decedent; therefore, the presumption that the services were gratuitous is not applicable. They were not related by blood or marriage, and there is no evidence or contention that they lived together as man and wife. The original express agreement between them in 1942 whereby decedent paid room and board brought them together as members of the same household, but not into a family relationship. In 1952 the arrangement changed, but again under an express agreement to share expenses equally. Their continued residence together was pursuant to this agreement. They lived in the same household for twenty-six years, but were never married. Neither party loaned or gave money to the other, nor did decedent ever give or bequeath any money to claimant's children.

These factors indicate that claimant's services were not rendered in discharge of the mutual moral or legal obligations of a family relationship and refute appellants' assertion that such a relationship existed. Appellants have not cited any cases or adduced any evidence which would require a finding that such a relationship existed.

■ ■ Under these circumstances, it is not necessary to prove that the services were rendered under an express contract; nor is it necessary for claimant to prove that she expected to receive payment and decedent expected to pay for her services. Floyd v. Estate of

239

Smith, 320 Ill App 171, 175, 50 NE2d 254; In re Estate of Brumshagen, 27 Ill App2d 14, 22, 169 NE2d 112. Where services are rendered by one person for another, which are knowingly and voluntarily accepted, without more, the law presumes that such services were given and received in the expectation of being paid for, and implies a promise to pay their reasonable worth. In re Estate of Foster, 46 Ill App2d 319, 326, 197 NE2d 257; 58 Am Jur, Work and Labor, § 6. Claimant's evidence of services of value beyond those contemplated by their express agreement to share expenses, performed by claimant for decedent and received and accepted by him, is sufficient to support an implied promise on the part of decedent to pay the reasonable value of such services.

However, assuming that such a family relationship did exist, we believe that there is sufficient evidence in the record to rebut the presumption that the services were gratuitous and to support the finding of the trial court that there was an implied contract to pay for the reasonable value of the services. The presumption diminishes in direct proportion to the remoteness of the degree and character of the family relationship and the character of the duties performed. Quigly v. Harold, 22 Ill App 269; 58 Am Jur, Work and Labor, § 15, and may be overcome by proof of facts or circumstances which show that the deceased intended that compensation would be paid and that the claimant intended to receive compensation, both intentions existing at the time the services were rendered. In re Estate of Lyons, 303 Ill App 642, 25 NE2d 555.

The record shows that decedent made repeated promises to claimant that if she cared for him he would pay for those services, and that he led her to believe she would be compensated. These promises and the burdensome nature of the nursing, laundry, cooking and housekeeping chores performed by claimant support the finding

that she expected to receive payment. There is no evidence to require a finding that either party intended these services to be gratuitous.

In this respect the present case is similar to In re Estate of Lyons, supra, where expressions of decedent that "he did not know how he could get along without his sister-in-law keeping house for him, and that he was really going to take care of her later on," were considered sufficient to rebut the presumption that services performed by a relative were presumed to be gratuitous. See also In re Estate of McWain, 77 Ill App2d 359, 222 NE2d 576.

Appellants stress the facts that claimant never made a demand for payment on decedent before his death, that they never mentioned an amount to be paid for her services, that decedent had a substantial bank account and that he had a reputation for paying his debts promptly, and argue that it is incredible that decedent did not pay claimant if that was intended.

It seems clear from the testimony that claimant expected to receive a substantial bequest in lieu of periodic payment during decedent's lifetime. In view of the repeated promises made by decedent, it was unnecessary for her to press demands for immediate payment. Furthermore, as stated in In re Estate of McWain, supra, at 367:

> ". . . The mere fact that there was no specific agreement as to the amount to be paid for the services, or the time of payment, would not prevent the implication of a promise to pay for necessary services requested and faithfully performed."

Under these circumstances we believe that a sufficiently definite set of circumstances existed to form an evidentiary basis for the trial court to find an implied contract to pay the reasonable value of those services.

■ This case was tried before a court without a jury, and we will not, as a reviewing court, interfere with the findings of fact of the trial court which were based upon the statements of witnesses whom he saw and heard testify, unless the judgment is clearly against the manifest weight of the evidence. Floyd v. Estate of Smith, supra, at 177.

In our opinion, the findings of the trial court are not contrary to the manifest weight of the evidence. The judgment is therefore affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.