*In re* ESTATE OF GERTRUDE MILBORN, Deceased (Paul Campbell *et al.*, Plaintiffs-Appellees, *v.* William Milborn, Ex'r of the Will of Gertrude Milborn, Deceased, Defendant-Appellant).

Third District    No. 3—83—0581

Opinion filed March 30, 1984.

Franklin M. Hartzell and Thomas W. O'Neal, both of Hartzell, Glidden, Tucker & Neff, of Carthage, for appellant.

Albert V. Ancelet and Ross A. Robinson, both of Capps, Ancelet & Stoverink, of Carthage, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiffs, Paul and LaVon Campbell, filed combined claims against the estate of Gertrude Milborn, deceased, seeking $5,000 for services performed for the decedent.

The only evidence at trial consisted of the unrebutted testimony of the plaintiffs. LaVon Campbell stated that except for the last few months of decedent's life, all meals during a five-year period from 1977 until the decedent's death in 1982 came from the Campbell's kitchen. Mrs. Campbell also did the housecleaning for the decedent

and most of the laundry. Both of the plaintiffs made sure that the decedent took her medicine every day and in the proper dosages.

Paul Campbell testified that he mowed the decedent's lawn, cared for the yard and patched the roof. While the decedent was hospitalized during the last few months of her life, Mr. Campbell was given a power of attorney authorizing him to handle the decedent's financial matters. Mr. Campbell also provided transportation for the decedent when she needed to see out of town doctors.

Both plaintiffs testified that they expected compensation for most of the services they performed. The court, sitting without a jury, found that the plaintiffs had established an implied contract with the decedent and allowed their claim in the amount of $5,000. The executor appeals.

There are two kinds of implied contracts; contracts implied in law (also called quasi-contracts) and contracts implied in fact. The trial court found that there was an implied contract between the decedent and the plaintiffs but did not specify which kind. The executor contends that the plaintiffs failed to prove either type of implied contract.

■■ ■ A contract implied in fact is one whereby a contractual duty is imposed by reason of a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promissor which show an intention to be bound. (*Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 873.) The record in the present case reveals no specific acts, conduct or circumstances which permit us to infer a promissory expression or intent to be bound. There is no evidence of a mutual understanding between the parties or the implied terms of the alleged agreement. Thus, there was no contract implied in fact.

■■ ■ A contract implied in law differs from a contract implied in fact in that it arises by implication of law wholly apart from the usual rules relating to contracts and does not depend on an agreement or consent of the parties. A contract implied in law is equitable in nature, predicated on the fundamental principle that no one should unjustly enrich himself at another's expense. (*Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 875.) Where services are rendered by one person for another which are knowingly and voluntarily accepted, the law presumes that such services were given and received in the expectation of being paid for and implies a promise to pay their reasonable worth. (*In re Estate of Dal Paos* (1969), 118 Ill. App. 2d 235; *In re Estate of Foster* (1964), 46 Ill. App. 2d 319.) When set in the context of a claim against a decedent's es-

tate, the facts giving rise to a quasi-contract must be proven by clear and convincing evidence. See *In re Estate of Pomeroy* (1974), 21 Ill. App. 3d 648.

The executor does not deny that the plaintiffs performed services which were knowingly and voluntarily accepted by the decedent. In fact, the executor presented no evidence at all on behalf of the estate. The executor's argument is that there was no quasi-contractual liability because the plaintiffs failed to prove by clear and convincing evidence that the decedent requested and expected to pay for the plaintiffs' services.

■ The plaintiffs were not required to prove that the decedent requested their services. As previously stated, where useful services are knowingly and voluntarily accepted, the law presumes that such services were given and received in the expectation of being paid for and implies a promise to pay. It is true that a person who officiously confers a benefit upon another is not entitled to be compensated therefore. (66 Am. Jur. 2d *Restitution & Implied Contracts* sec. 23 (1973).) However, it is not the absence of a request which bars recovery but the officiousness of the claimants' conduct.

■ Officiousness is synonymous with meddlesomeness and can be described as volunteering one's services where they are neither asked for nor needed. (Webster's Third New International Dictionary 1567 (1971).) Despite the fact that the plaintiffs were not competent witnesses as to any request made by the decedent (Ill. Rev. Stat. 1981, ch. 51, par. 2), it would be unreasonable for us to assume, based on the nature of the work performed by the plaintiffs and the duration of their service, that the decedent made no request whatsoever. Furthermore, it cannot be said that the plaintiffs' services were unneeded.

According to Mrs. Campbell, the decedent lived alone and never cooked. She would only eat when food was brought to her. Doctors would prescribe medication for the decedent only if someone else would give it to her. Mr. Campbell performed all of the yard work and building maintenance. The decedent may not have required 24-hour nursing care, but it is obvious that she was unable to properly care for herself. In view of the fact that the plaintiffs were unable to obtain assistance from the decedent's family, their services were not only needed, they were essential and definitely not officious. Even without clear proof of a request by the decedent, her knowing and voluntary acceptance of the plaintiffs' necessary services over a five-year period raises a promise implied in law to pay the reasonable value of such services.

■ Next, the executor argues that the plaintiffs intended their

services to be gratuitous. Gratuitous intent in cases of this type can be shown in one of two ways. The first is by the conduct of the claimant. With regard to the plaintiffs' intent and expectations, counsel for the executor made the following statement during closing argument: "I think that the testimony of the claimants show that one party expected to receive payment, that is the Campbells, certainly no contradiction at all on that." Based on the record, we agree with this conclusion. Having conceded that the plaintiffs' conduct did not demonstrate a gratuitous intent, the executor may not now argue to the contrary.

Gratuitous intent may also be presumed in certain cases. Where persons live together as members of one family, a promise to pay for services of one to another is not implied from the mere rendition and acceptance of such services. Absent a showing of an express or implied in fact contract for payment, the services are presumed to be gratuitous. Blood kinship is not necessary in order to raise the presumption. The rule rests upon the idea of mutual dependence between those who are members of one *immediate* family even though there may be no tie of blood or affinity. *In re Estate of White* (1973), 15 Ill. App. 3d 200.

The executor acknowledges that the plaintiffs are not related to the decedent by blood or marriage and did not share the same house as the decedent. Nonetheless, the executor asks us to extend the presumption of gratuitous intent because of the bond of friendship between the plaintiffs and decedent and because the plaintiffs loved the decedent and treated her as a member of the family.

■ A bond of friendship between parties who do not live as members of an immediate family is not regarded by the law as sufficient to raise a presumption of gratuitous intent. We are aware of one case in which a friendly business and social relationship between the claimant and decedent was deemed probative of the claimant's gratuitous intent. (*McRoberts v. Estate of Kennelly* (1964), 52 Ill. App. 2d 34.) However, the friendship was regarded as a relatively minor factor which was combined with much stronger evidence to show the true intent of the claimant. Furthermore, the court in *McRoberts* specifically stated that the estate was relying not on a presumption, but on the claimant's own conduct as revealed by the record. (52 Ill. App. 2d 34, 36-37.) Accordingly, we decline to extend the presumption of gratuitous intent beyond the traditional bounds of an immediate family relationship.

The final issue is whether the plaintiffs proved that their claim was worth $5,000. Mrs. Campbell testified that she arrived at a value

of $5,000 based on the fact that her mother was paying $1,700 per month for nursing home care. Although the plaintiffs did not provide the decedent with 24-hour care as would a nursing home, $5,000 is still a nominal figure which breaks down to approximately $60 per month for the plaintiffs' five years of service.

■ ■ To recover under a quasi-contract, the plaintiffs are required to prove the reasonable value of their services. (*In re Estate of Dal Paos* (1969), 118 Ill. App. 2d 235, 240.) The executor certainly cannot argue that $60 per month is an excessive or unreasonable value to place on three meals per day, part-time nursing care, housecleaning, maintenance work and transportation. We find that $5,000 was a reasonable value to place on the plaintiffs' services and affirm the judgment of the circuit court of Hancock County.

Affirmed.

BARRY and SCOTT, JJ., concur.