*In re* ESTATE OF GERTURDE BRITTIN, Deceased (Pam Strode *et al.*, Petitioners-Appellants, v. Kevin McCarthy, Ex'r of the Estate of Gertrude Brittin, Deceased, Respondent-Appellee).

Fourth District   No. 4—92—0934

Argued June 16, 1993.—Opinion filed July 29, 1993.

Timothy D. Sturm (argued), of Sturm & Germeraad, of Springfield, for appellants.

Donald H. Funk (argued), of VanMeter, Oxtoby & Funk, of Springfield, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In February 1991, petitioners, Pam and James Strode, filed a claim against the estate of Gertrude Brittin (the decedent) for personal services they had performed for her. In December 1991, the trial court denied their claim by granting the motion for summary judgment brought by Kevin McCarthy, respondent and executor of decedent's estate. The trial court also granted respondent's motion to strike portions of affidavits submitted by petitioners in response to respondent's motion for summary judgment. Petitioners filed motions to reconsider and to refile their affidavits, but in October 1992, the trial court denied those motions.

Petitioners appeal, arguing that the trial court erred by striking their affidavits and granting respondent's motion for summary judgment. Alternatively, they argue that the trial court's failure to make findings or to give reasons for its decisions requires this court to send their case back to the trial court so it will make those determinations. We agree with petitioners that the trial court improperly granted respondent's motion for summary judgment. Therefore, we reverse.

I. BACKGROUND

In July 1990, the trial court admitted decedent's will, which she had executed on October 26, 1988, to probate and appointed respondent as executor of her estate. In February 1991, petitioners, who were friends and neighbors of the decedent and not related to her, filed a claim against decedent's estate for $25,000 for personal services they had performed for her between January 1980 and October 1987. These services included lawn care, snow removal, painting, wallpapering, sump pump maintenance, and driving decedent on personal errands. They also included repairs of plumbing, furniture, gutters, and sidewalks at decedent's residence.

In April 1991, respondent filed a motion for summary judgment against petitioners' claim. In support of this motion, respondent presented a portion of decedent's will which stated that the dece-

dent held several certificates of deposit (CDs) as joint tenant with the right of survivorship and instructed her executor to deliver these instruments to the joint tenants upon her death and to make no claim against them. Decedent's will did not specifically name or discuss any of these CDs or any of the joint tenants named on the CDs. Respondent alleged that pursuant to this portion of decedent's will, he delivered CDs in an aggregate amount of $25,475 to petitioner James Strode. Based upon that delivery, respondent contended that petitioners had been paid for their personal services under decedent's will and asked the court to deny petitioners' claim. Respondent also alleged that decedent had given petitioner James Strode $3,526 for improvements to Strode's residence.

In September 1991, petitioners filed a response to respondent's motion for summary judgment, which included affidavits from each petitioner and from Betty Harris and Ron Lutes. Without disputing that James had received the CDs and the $3,526 from decedent, petitioners noted that each of the CDs was dated prior to October 23, 1987. James' affidavit stated that during "the winter of 1987" (meaning, in context, November or December 1987), after decedent had moved into a nursing home, decedent had told him to "turn in a bill" to her estate for the work he had done for her. Pam's affidavit stated that in October 1987, decedent had told her that "I am sorry I took [James] out of the will. *** I want [James] to turn in claims for all the work you've done for me."

Harris' affidavit stated that (1) she had worked for decedent at her residence for several years; (2) in October 1987, she heard decedent say that she felt bad about changing her will; and (3) decedent had told her and James to turn in claims against decedent's estate for the work they had done for decedent. Lutes, decedent's stepgrandson, stated in his affidavit that he visited decedent weekly from 1986 until her death in July 1990, and that sometime in 1987 decedent had asked him to have James make a claim against her estate for the work he had done for her over the years. Petitioners asserted that despite James' receipt of the CDs, these affidavits created a material issue of fact regarding decedent's intent to have her estate pay them for their services beyond the CDs she established with James as joint tenant with right of survivorship.

In October 1991, respondent filed a motion to strike portions of petitioners' affidavits. Respondent claimed that the court, pursuant to section 8—201 of the Dead Man's Act (Act) (Ill. Rev. Stat. 1991, ch. 110, par. 8—201), should strike all portions of petitioners' affidavits which referred to conversations with decedent. Similarly, re-

spondent claimed that the court should strike all portions of the Harris and Lutes affidavits which referred to conversations with decedent because they constituted hearsay, and Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) barred their use by the court when deciding a motion for summary judgment. Petitioners filed a response to respondent's motion to strike, which essentially disputed that the Act or Rule 191 required the court to strike portions of their submitted affidavits.

After a hearing on respondent's motions in October 1991, the trial court made a docket entry on December 11, 1991, stating that it allowed respondent's motion to strike and granted respondent's motion for summary judgment. In January 1992, petitioners filed a motion to reconsider, which also requested permission to refile the affidavits. In April 1992, the court held a hearing after receiving petitioners' amended motion to reconsider and respondent's response to petitioners' motion to reconsider. On June 9, 1992, the court entered a written order reaffirming its December 1991 docket entry and a separate written order denying petitioners' motion to reconsider.

On October 7, 1992, the court held another hearing regarding the proper form of its written orders entered in June 1991. On October 20, 1992, the court entered a duplicate order granting respondent's motion to strike and for summary judgment. The court added to its order denying the motion to reconsider that it also denied petitioners' request to refile affidavits. The petitioners appeal from these October 20, 1992, orders.

## II. ANALYSIS

A court properly grants summary judgment when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. (*Estate of Jesmer v. Rohlev* (1993), 241 Ill. App. 3d 798, 805, 609 N.E.2d 816, 821; *Larson v. Decatur Memorial Hospital* (1992), 236 Ill. App. 3d 796, 800-01, 602 N.E.2d 864, 868.) The court must construe the evidence strongly against the movant and liberally in favor of the opponent. (*Kuwik v. Starmark Star Marketing & Administration, Inc.* (1992), 232 Ill. App. 3d 8, 12, 597 N.E.2d 251, 254.) This court reviews *de novo* the trial court's determination of whether a genuine issue of material fact exists (*Larson*, 236 Ill. App. 3d at 801, 602 N.E.2d at 868), and will reverse an order granting summary judgment only if we find a genu-

ine issue of material fact does exist (*Jesmer*, 241 Ill. App. 3d at 805, 609 N.E.2d at 821).

■ The essence of petitioners' claim against decedent's estate is for payment for services they rendered to decedent during her lifetime. The law presumes services knowingly and voluntarily accepted by a decedent during the decedent's lifetime from nonfamily claimants to have been performed with an expectation of receiving compensatory payment. Such services provide a basis upon which those claimants may bring a claim against the decedent's estate. (*In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 690-92, 461 N.E.2d 1075, 1077-79 (knowing and voluntary acceptance raises an implied promise to pay, thus creating an implied contract in law); *In re Estate of Dal Paos* (1969), 118 Ill. App. 2d 235, 240-41, 254 N.E.2d 300, 303-04; see also *Allfree v. Estate of Rosenthal* (1969), 113 Ill. App. 2d 90, 95, 251 N.E.2d 792, 794 (services rendered at decedent's request and accepted by decedent, where no reason exists to suppose they were gratuitous, raise an implication of liability); *In re Estate of Mallas* (1968), 100 Ill. App. 2d 88, 92-93, 241 N.E.2d 482, 484-85.) A claimant who has performed such services is entitled to receive the reasonable value thereof. (*Milborn*, 122 Ill. App. 3d at 693, 461 N.E.2d at 1079.) The law presumes such services to be gratuitous only if they are performed by the decedent's family members. (*Milborn*, 122 Ill. App. 3d at 692, 461 N.E.2d at 1079.) Further, the lack of a specific agreement between decedent and a claimant on the amount of payment for the services or the time of payment, or a claimant's failure to make a demand for payment for the services during decedent's lifetime, does not necessarily detract from a claim. (*Jesmer*, 241 Ill. App. 3d at 804, 609 N.E.2d at 820; see also *Mallas*, 100 Ill. App. 2d at 92, 241 N.E.2d at 484.) Therefore, based upon the above authority, legal presumptions provide petitioners with a valid claim against decedent's estate for the value of the services performed by petitioners for decedent.

■ Regarding the CDs James received as survivor of the joint tenancy with decedent, when property is transferred into joint tenancy with the right of survivorship, the law presumes that the transferor intended to make a gift to the surviving joint tenant. (*In re Estate of Kaplan* (1991), 219 Ill. App. 3d 448, 458, 579 N.E.2d 963, 969; *In re Estate of Martin* (1990), 201 Ill. App. 3d 1061, 1064, 559 N.E.2d 1112, 1114.) A contesting party may overcome this presumption by presenting clear and convincing evidence of the transferor's lack of donative intent. (*Kaplan*, 219 Ill. App. 3d at

458, 579 N.E.2d at 969 (creation of account for transferor's convenience demonstrates a lack of donative intent).) Thus, unless respondent can overcome this presumption in the present case, the law presumes the CDs James received to be a gift from decedent.

Respondent does not contest petitioners' claim that they performed services for decedent as set forth in their claim against decedent's estate. Instead, respondent asserts that the CDs, which the decedent took out contemporaneously with the petitioners' performance of the services and then had respondent deliver to James upon her death, constituted payment to petitioners for the services they had rendered to decedent. We disagree with respondent's assertion.

As discussed above, two presumptions exist as a matter of law: (1) services performed by nonfamily members (such as petitioners in the present case) for a decedent are not gratuitous and are entitled to compensation; and (2) property transferred by joint tenancy with the right of survivorship is a gift. Nothing respondent presented to the court in support of respondent's motion for summary judgment demonstrates that petitioners should not receive the benefit of both presumptions.

■ Because we are at the summary judgment stage, the trial court should not have weighed the evidence to determine whether respondent had defeated the presumption of donative intent which attached to the CDs delivered to James. (See *Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1992), 229 Ill. App. 3d 680, 683, 593 N.E.2d 1070, 1072.) Assuming the court here did not do so, we then surmise that the court apparently presumed either that property transferred by joint tenancy at a decedent's death constitutes payment for services rendered and is not a gift, or, more specifically, that property transferred by joint tenancy at a decedent's death to a joint tenant who was performing services for the decedent when the decedent created the joint tenancy constitutes payment for services rendered and is not a gift. We are unable to find nor has respondent directed us to any case law which supports either of these presumptions. In fact, both presumptions directly contradict the second presumption discussed above, namely, that property transferred by joint tenancy is a gift. Because of this direct contradiction, we disagree with the trial court that, as a matter of law, respondent is entitled to summary judgment.

We must assume that the trial court made one of the presumptions discussed above because the court neither made findings nor provided explanations for its rulings. Besides granting respondent's

motions and denying petitioners' motions, the court stated only that it found that no material issue of fact existed. The court's failure to provide any further explanation is particularly unfortunate in light of petitioners' continued requests during the proceedings below for the trial court to elaborate on its orders. The trial court's failure to explain its rulings is contrary to the holding of this court in *Muck v. Van Bibber* (1992), 223 Ill. App. 3d 830, 585 N.E.2d 1147, directing trial courts to make specific findings or to discuss the analysis underlying their decisions. Although the present case does not present issues as complex as those in *Muck*, we nevertheless find ourselves at a great disadvantage in reviewing this case because of the trial court's failure to explain its rulings. As we wrote in *Muck*, this court and the parties deserve better. Although we have concluded we can decide this case based upon the limited record before us, we will not hesitate to remand a case in the future, as we did in *Muck*, when inadequate trial court findings inhibit our ability to appropriately review a case.

As we find this case, petitioners have presented a claim for services they rendered for decedent during her lifetime. This claim raises the presumption that they are entitled to compensation from decedent's estate for their services. Respondent and petitioners have presented evidence that respondent delivered CDs to James that decedent had created with James as joint tenant. The law presumes the transfer of the CDs to James to be a gift from decedent, and as we stated above, no legal connection exists between the CDs and the services rendered. If petitioners can establish the value of their services by clear and convincing evidence (see *Milborn*, 122 Ill. App. 3d at 693, 461 N.E.2d at 1079), they have a valid claim against decedent's estate. If respondent seeks to rebut either presumption or to demonstrate that petitioners have been paid for their services, including establishing a connection between the CDs and petitioners' services, he must present some evidence to do so. All we have before us is respondent's bare allegation that the CDs were payment for petitioners' services, and this allegation does not provide a factual basis to overcome either presumption.

The parties also argue at length over the evidentiary content of the four affidavits presented by petitioners in their response to the motion for summary judgment. However, because we hold that the trial court erred in granting summary judgment for the respondent even if the court properly granted respondent's motion to strike portions of the affidavits petitioners submitted in opposition to respondent's motion for summary judgment, we need not address the

issues raised by the court's order striking portions of the petitioners' affidavits. The respondent's motion for summary judgment should have been denied even if petitioners had presented nothing in opposition to it.

### III. Conclusion

For the reasons stated, we reverse the trial court's grant of respondent's motion for summary judgment and remand for further proceedings.

Reversed and remanded.

KNECHT and LUND, JJ., concur.