*In re* ESTATE OF DONALD W. ETHERTON, Deceased (Van A. Bitner, Petitioner-Appellant, v. Terry D. Etherton *et al.*, Ex'rs of the Estate of Donald W. Etherton, Deceased, Respondents-Appellees).

Fourth District   No. 4—95—0723

Opinion filed October 3, 1996.—Rehearing denied November 6, 1996.

Alan D. Tucker and Grant T. Swinger, both of Law Offices of Alan Tucker, P.C., of Havana, for appellant.

Charles L. McNeil, of McNeil & McNeil, of Mason City, for appellees.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Petitioner Van A. Bitner filed a claim against the estate of Donald W. Etherton (the decedent) for farm services rendered by petitioner. After petitioner presented evidence that he harvested and hauled crops for decedent, respondents Terry D. Etherton and Shari L. Malson, the executors of the estate, moved to dismiss the claim. Respondents argued that petitioner failed to establish either that petitioner and decedent had intended payment for the work, or the value and extent of the work. The trial court dismissed the claim. Petitioner appeals, contending (1) he presented a *prima facie* case for recovery in *quantum meruit*, and (2) the trial court improperly excluded as hearsay an admission of a party opponent made by decedent. We agree with petitioner's first contention and reverse.

Decedent raised corn and soybeans in Mason County, Illinois, until his death in November 1993. In February 1994, petitioner filed a verified claim against the estate for harvesting services rendered. The claim was itemized as follows:

Soybeans:

    Combine and operator 110 acres at $ 30.00/acre.......$3,300.00
    Truck and operator 110 acres at $ 4.00/acre.............. 440.00

Corn:

Truck operator 2 days at $ 55.00/day........................ 110.00

TOTAL: $3,850.00.

After respondents denied payment, the trial court held a hearing without jury on the claim.

At the hearing, petitioner attempted to proceed on the alternate theories of express and implied contract. His testimony was severely hampered because respondents made numerous objections pursuant to the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)), most of which were sustained by the court. Petitioner was not permitted to testify regarding his conversations with decedent, nor was he allowed to describe the harvesting work he performed because the work was ruled an "event which took place in the presence of the deceased." See 735 ILCS 5/8—201 (West 1992).

Petitioner testified that he had been a friend of decedent, whom he had known all his life. Petitioner owned a farm 10 to 12 miles distant from decedent's place. Decedent was ill during 1993. On October 13, 1993, petitioner brought his combine, and 20-foot head and grain truck to decedent's farm in order to harvest and haul soybeans. Steve Tracy (co-owner of the combine), Beverly Bitner (petitioner's mother), decedent, and petitioner all participated in the harvest. Petitioner stated that he had not intended to donate his time, labor, and equipment. He based his claim of $30 per acre harvest upon figures supplied by the University of Illinois Cooperative Extension Service (Extension Service). On cross-examination, petitioner admitted that Extension Service tables listed the cost of owning and operating a combine, and not the rates customarily charged for harvesting services. The Extension Service tables listed the operating cost of a 140-horsepower combine at $20 per acre, but petitioner supplied a 150-horsepower combine. The Extension Service tables listed grain hauling rates in bushels per mile, not per day or per acre as petitioner had calculated in his claim.

Beverly Bitner testified next. Although Beverly is petitioner's mother, the trial court ruled she was not an "interested party" for purposes of the Dead-Man's Act, and thus the court permitted Beverly to testify freely about events that took place in decedent's presence. Beverly had been a friend and houseguest of decedent. Harvest conditions were very poor in the fall of 1993 because of heavy rainfall. Decedent farmed 500 acres without aid of employees, and by mid-October 1993, he had not completed the harvest. Petitioner provided his combine, truck, and labor to complete the harvest. When asked how many acres of soybeans were harvested by petitioner, Beverly responded, "160 acres, I guess, although I really don't know." Beverly stated petitioner did not haul any corn. She did some corn hauling

using decedent's truck. When petitioner's attorney asked Beverly how petitioner came to perform the farm work, Beverly attempted to relay what decedent had said. Respondents' objection to the testimony as hearsay was sustained. Petitioner made no offer of proof regarding the content of decedent's statement.

John Dosier provided background information about custom farming. Custom farming is the practice of providing equipment and labor to harvest another's crops. Dosier did not participate in the harvest of decedent's crops, but he performed custom farming for others in the Mason County area. Harvest conditions were extremely wet and poor in 1993, and that year Dosier performed custom farming for many farmers who ordinarily would not need his services. Dosier did not know the customary rate charged to harvest soybeans, but he charged $40 to $50 per acre of corn, depending on field conditions. Dosier acknowledged, however, that it was "not unheard of" for neighbors to harvest for free when a farmer needed help.

At the close of petitioner's evidence, respondents moved to dismiss the claim. The court stated, "I find that there has been no expressed agreement proven and on the implied agreement I don't think that the evidence is sufficient to prove all the elements of a claim either." Accordingly, the court granted the motion.

■ In jury trials, verdicts may be directed only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). By statute, there is a different rule in nonjury trials. Where there is a motion in a nonjury case to find for defendant at the close of plaintiff's evidence, "the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence," and rule accordingly. 735 ILCS 5/2—1110 (West 1994). Section 2—1110 of the Code of Civil Procedure (Code) recognizes that where the judge is the trier of fact it is illogical to require the defendant to put on its case when the judge is ready to rule for defendant at the close of plaintiff's case.

■ There is a two-stage procedure under section 2—1110 of the Code. At the first stage, the trial court determines whether plaintiff has made out a *prima facie* case, whether "he has *** presented at least some evidence on every element essential to his cause of action." *Kokinis v. Kotrich*, 81 Ill. 2d 151, 154, 407 N.E.2d 43, 45 (1980). If he has not, defendant is entitled to judgment as a matter of law. *Kokinis*, 81 Ill. 2d at 154-55, 407 N.E.2d at 45. If "plaintiff has made out a *prima facie* case" (*Kokinis*, 81 Ill. 2d at 155, 407 N.E.2d at 45),

then at the second stage the trial court views the case "in the same manner as it would had the defendant rested at the close of the plaintiff's case" (*Kokinis*, 81 Ill. 2d at 158, 407 N.E.2d at 46 (Ryan, J., specially concurring)). See *People v. Hawkins*, 221 Ill. App. 3d 460, 464, 582 N.E.2d 243, 246 (1991). At the second stage, the court may enter judgment for defendant, or it may deny defendant's motion and allow defendant to put on its case. See *People v. Wise*, 282 Ill. App. 3d 642, 646 (1996).

■ Petitioner contends the trial court wrongly concluded that petitioner failed to present a *prima facie* case and dismissed the case without ever weighing the evidence. Petitioner asserts that this court is therefore required to address this matter as a question of law, *i.e.*, whether petitioner presented at least some evidence on every element essential to sustain a cause of action in *quantum meruit*. However, it is not clear that the trial court failed to reach the second stage of the *Kokinis* procedure. The court simply stated that it found the evidence insufficient to prove all the elements of a claim. The court's statement may be interpreted two ways: (1) the court found that petitioner failed to present at least some evidence on all essential elements (largely a legal question), or (2) the court found petitioner's evidence unconvincing or of insufficient weight to meet his burden of proof (a factual question). The trial court's factual determinations will not be overturned on review unless they are against the manifest weight of the evidence. *Hawkins*, 221 Ill. App. 3d at 463, 582 N.E.2d at 246.

Regardless of whether the trial court found petitioner's evidence legally or factually insufficient, we hold that it erred in dismissing the claim. Although the trial court properly found that petitioner failed to prove the existence of an oral agreement, petitioner presented sufficient evidence of his entitlement to payment under a theory of *quantum meruit* to survive respondents' section 2—1110 motion. *Quantum meruit* describes "a cause of action which seeks to recover the reasonable value of services which have been nongratuitously rendered, but where no contract exists to prescribe exactly how much the renderer should have been paid." *Rohter v. Passarella*, 246 Ill. App. 3d 860, 866, 617 N.E.2d 46, 50 (1993). The law presumes services knowingly and voluntarily accepted by a decedent during the decedent's lifetime from nonfamily claimants to have been performed with an expectation of receiving compensatory payment. *In re Estate of Brittin*, 247 Ill. App. 3d 756, 760, 617 N.E.2d 877, 880 (1993). A claimant who performed such services is entitled to receive the reasonable value thereof. *Brittin*, 247 Ill. App. 3d at 760, 617 N.E.2d at 880. If such services were performed by a family member,

however, they are presumed to be gratuitous. *Brittin*, 247 Ill. App. 3d at 760, 617 N.E.2d at 880.

It has been said that *quantum meruit* claims against an estate should be scrutinized with care (*In re Estate of Rollins*, 269 Ill. App. 3d 261, 273, 645 N.E.2d 1026, 1034 (1995)), and that a claimant has the burden of proving a claim against an estate by clear and convincing evidence (*In re Estate of Milborn*, 122 Ill. App. 3d 688, 690-91, 461 N.E.2d 1075, 1078 (1984); but *cf. In re Estate of Sewart*, 274 Ill. App. 3d 298, 309, 652 N.E.2d 1151, 1159-60 (1995); *In re Estate of Brumshagen*, 27 Ill. App. 2d 14, 22, 169 N.E.2d 112, 116 (1960) (preponderance of the evidence standard applied)). Petitioner's evidence was sketchy, largely because of the restrictions placed on his testimony pursuant to the Dead-Man's Act, but the evidence was nevertheless sufficient to raise a presumption in favor of recovery.

Petitioner established that he was not a relative of decedent, he performed a valuable service for decedent, he intended to be paid for his work, and decedent knowingly and voluntarily accepted the benefit of petitioner's labor and equipment. Nothing in the record contradicts petitioner's evidence, nor is there any indication that the trial court found the testimony not credible.

Respondents contend, however, that petitioner failed to establish (1) a reasonable expectation to be paid, (2) the nature of the services rendered, and (3) the reasonable value of the services. We disagree. First, as noted above, a presumption arises that the parties intended payment under the facts presented. The facts that petitioner was a friend of decedent and that it is "not unheard of" for farmers sometimes to help each other out for free are insufficient to erase this presumption. The services provided were not trivial, and petitioner's heavy farm equipment cost money to operate. Although the presumption of nongratuity may burst if the friendship is of such a quality to be nearly familial (see *Sewart*, 274 Ill. App. 3d at 310-11, 652 N.E.2d at 1160), the evidence here does not suggest that petitioner and decedent shared anything more than a casual friendship. Second, the evidence was sufficient to establish that petitioner harvested decedent's soybeans. Petitioner's verified claim stated that he harvested 110 acres, but his mother testified that he harvested approximately 160 acres. Had the Dead-Man's Act not barred petitioner from testifying personally, any confusion about the exact number of acres harvested might have been removed. Respondents cannot complain that the proof exceeded the claim. It is true that petitioner failed to establish that he hauled any corn for decedent. However, the $110 sought for corn hauling represents but a small fraction of the claim. Petitioner's entire claim should not fail because of this

70

lack of proof. Finally, petitioner's evidence regarding the value of his services was sufficient for the court to determine a reasonable amount of compensation due.

We therefore reverse the dismissal. On remand, the trial court is directed to proceed as if it denied respondent's motion.

As we reverse and remand on the first issue, we need not consider whether Beverly Bitner's testimony regarding decedent's statements to her were properly excluded as hearsay. If Beverly Bitner's testimony was not excluded under the Dead-Man's Act, however, the testimony would appear to come in as an admission of a party opponent, an exception to the hearsay rule. If Beverly Bitner was attempting to relate statements made by decedent to plaintiff, of which she had no firsthand knowledge, the objection was properly sustained.

Reversed and remanded.

GREEN and KNECHT, JJ., concur.