NO. 4-95-0723

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

In the Matter of the Estate of DONALD W.)    Appeal from

ETHERTON, Deceased,                     )    Circuit Court of

VAN A. BITNER,                          )    Mason County

          Petitioner-Appellant,         )    No. 93P62

          v.                            )

TERRY D. ETHERTON and SHARI L. MALSON,  )    

Executors of the Estate of Donald W.    )    Honorable

Etherton, Deceased,                     )    Fred W. Reither,

          Respondents-Appellees.        )    Judge Presiding.

_________________________________________________________________

          PRESIDING JUSTICE COOK delivered the opinion of the

 court:

          Petitioner Van A. Bitner filed a claim against the

estate of Donald W. Etherton (the decedent) for farm services

rendered by petitioner.  After petitioner presented evidence that

he harvested and hauled crops for decedent, respondents Terry D.

Etherton and Shari L. Malson, the executors of the estate, moved

to dismiss the claim.  Respondents argued that petitioner failed

to establish either that petitioner and decedent had intended

payment for the work, or the value and extent of the work.  The

trial court dismissed the claim.  Petitioner appeals, contending

(1) he presented a prima facie case for recovery in quantum

meruit, and (2) the trial court improperly excluded as hearsay an

admission of a party opponent made by decedent.  We agree with

petitioner's first contention and reverse.

          Decedent raised corn and soybeans in Mason County,

Illinois, until his death in November 1993.  In February 1994,

petitioner filed a verified claim against the estate for harvest-

ing services rendered.  The claim was itemized as follows:

               Soybeans:

                    Combine and operator

                    110 acres at $ 30.00/acre.......$3,300.00

                    Truck and operator

                    110 acres at $ 4.00/acre........   440.00

               Corn:

                    Truck operator

                    2 days @ $ 55.00/day............   110.00

                                           TOTAL:   $3,850.00

After respondents denied payment, the trial court held a hearing

without jury on the claim.

          At the hearing, petitioner attempted to proceed on

the alternate theories of express and implied contract.  His

testimony was severely hampered because respondents made numerous

objections pursuant to the Dead-Man's Act (735 ILCS 5/8-201 (West

1992)), most of which were sustained by the court.  Petitioner

was not permitted to testify regarding his conversations with

decedent, nor was he allowed to describe the harvesting work he

performed because the work was ruled an "event that took place in

the presence of the deceased."  See 735 ILCS 5/8-201 (West 1992).

          Petitioner testified that he had been a friend of

decedent, whom he had known all his life.  Petitioner owned a

farm 10 to 12 miles distant from decedent's place.  Decedent was

ill during 1993.  On October 13, 1993, petitioner brought his

combine, 20-foot head and grain truck to decedent's farm in order

to harvest and haul soybeans.  Steve Tracy (co-owner of the com-

bine), Beverly Bitner (petitioner's mother), decedent, and

petitioner all participated in the harvest.  Petitioner stated

that he had not intended to donate his time, labor, and equip-

ment.  He based his claim of $30 per acre harvest upon figures

supplied by the University of Illinois Cooperative Extension

Service (Extension Service).  On cross-examination, petitioner

admitted that Extension Service tables listed the cost of owning

and operating a combine, and not the rates customarily charged

for harvesting services.  The Extension Service tables listed the

operating cost of a 140-horsepower combine at $20 per acre, but

petitioner supplied a 150-horsepower combine.  The Extension

Service tables listed grain hauling rates in bushels per mile,

not per day or per acre as petitioner had calculated in his

claim.

          Beverly Bitner testified next.  Although Beverly is

petitioner's mother, the trial court ruled she was not an "inter-

ested party" for purposes of the Dead-Man's Act, and thus the

court permitted Beverly to testify freely about events that took

place in decedent's presence.  Beverly had been a friend and

houseguest of decedent.  Harvest conditions were very poor in the

fall of 1993 because of heavy rainfall.  Decedent farmed 500

acres without aid of employees, and by mid-October 1993, he had

not completed the harvest.  Petitioner provided his combine,

truck, and labor to complete the harvest.  When asked how many

acres of soybeans were harvested by petitioner, Beverly respond-

ed, "160 acres, I guess, although I really don't know."  Beverly

stated petitioner did not haul any corn.  She did some corn

hauling using decedent's truck.  When petitioner's attorney asked

Beverly how petitioner came to perform the farm work, Beverly

attempted to relay what decedent had said.  Respondents' objec-

tion to the testimony as hearsay was sustained.  Petitioner made

no offer of proof regarding the content of decedent's statement.

          John Dosier provided background information about

custom farming.  Custom farming is the practice of providing

equipment and labor to harvest another's crops.  Dosier did not

participate in the harvest of decedent's crops, but he performed

custom farming for others in the Mason County area.  Harvest

conditions were extremely wet and poor in 1993, and that year

Dosier performed custom farming for many farmers who ordinarily

would not need his services.  Dosier did not know the customary

rate charged to harvest soybeans, but he charged $40 to $50 per

acre of corn, depending on field conditions.  Dosier acknowl-

edged, however, that it was "not unheard of" for neighbors to

harvest for free when a farmer needed help.

          At the close of petitioner's evidence, respondents

moved to dismiss the claim.  The court stated, "I find that there

has been no expressed agreement proven and on the implied agree-

ment I don't think that the evidence is sufficient to prove all

the elements of a claim either."  Accordingly, the court granted

the motion.

          In jury trials, verdicts may be directed only in those

cases in which all the evidence, when viewed in its aspect most

favorable to the opponent, so overwhelmingly favors movant that

no contrary verdict based on that evidence could ever stand. 

Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510, 229

N.E.2d 504, 513-14 (1967).  By statute, there is a different rule

in nonjury trials.  Where there is a motion in a nonjury case to

find for defendant at the close of plaintiff's evidence, "the

court shall weigh the evidence, considering the credibility of

the witnesses and the weight and quality of the evidence," and

rule accordingly.  735 ILCS 5/2-1110 (West 1994).  Section 2-1110

of the Code of Civil Procedure (Code) recognizes that where the

judge is the trier of fact it is illogical to require the defen-

dant to put on its case when the judge is ready to rule for

defendant at the close of plaintiff's case.

          There is a two-stage procedure under section 2-1110 of

the Code.  At the first stage, the trial court determines whether

plaintiff has made out a prima facie case, whether "he has ***

presented at least some evidence on every element essential to

his cause of action."  Kokinis v. Kotrich, 81 Ill. 2d 151, 154,

407 N.E.2d 43, 45 (1980).  If he has not, defendant is entitled

to judgment as a matter of law.  Kokinis, 81 Ill. 2d at 154-55,

407 N.E.2d at 45.  If "plaintiff has made out a prima facie case"

(Kokinis, 81 Ill. 2d at 155, 407 N.E.2d at 45), then at the

second stage the trial court views the case "in the same manner

as it would had the defendant rested at the close of the plain-

tiff's case" (Kokinis, 81 Ill. 2d at 158, 407 N.E.2d at 46 (Ryan,

J., specially concurring)).  See People v. Hawkins, 221 Ill. App.

3d 460, 464, 582 N.E.2d 243, 246 (1991).  At the second stage,

the court may enter judgment for defendant, or it may deny

defendant's motion and allow defendant to put on its case.  See

People v. Wise, No. 4-96-0035, slip op. at 6 (August 1, 1996),

___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___.

          Petitioner contends the trial court wrongly concluded

that petitioner failed to present a prima facie case and dis-

missed the case without ever weighing the evidence.  Petitioner

asserts that this court is therefore required to address this

matter as a question of law, i.e., whether petitioner presented

at least some evidence on every element essential to sustain a

cause of action in quantum meruit.  However, it is not clear that

the trial court failed to reach the second stage of the Kokinis

procedure.  The court simply stated that it found the evidence

insufficient to prove all the elements of a claim.  The court's

statement may be interpreted two ways:  (1) the court found that

petitioner failed to present at least some evidence on all

essential elements (largely a legal question), or (2) the court

found petitioner's evidence unconvincing or of insufficient

weight to meet his burden of proof (a factual question).  The

trial court's factual determinations will not be overturned on

review unless they are against the manifest weight of the evi-

dence.  Hawkins, 221 Ill. App. 3d at 463, 582 N.E.2d at 246.

          Regardless of whether the trial court found

petitioner's evidence legally or factually insufficient, we hold

that it erred in dismissing the claim.  Although the trial court

properly found that petitioner failed to prove the existence of

an oral agreement, petitioner presented sufficient evidence of

his entitlement to payment under a theory of quantum meruit to

survive respondents' section 2-1110 motion.  Quantum meruit

describes "a cause of action which seeks to recover the reason-

able value of services which have been nongratuitously rendered,

but where no contract exists to prescribe exactly how much the

renderer should have been paid."  Rohter v. Passarella, 246 Ill.

App. 3d 860, 866, 617 N.E.2d 46, 50 (1993).  The law presumes

services knowingly and voluntarily accepted by a decedent during

the decedent's lifetime from nonfamily claimants to have been

performed with an expectation of receiving compensatory payment. 

In re Estate of Brittin, 247 Ill. App. 3d 756, 760, 617 N.E.2d

877, 880 (1993).  A claimant who performed such services is

entitled to receive the reasonable value thereof.  Brittin, 247

Ill. App. 3d at 760, 617 N.E.2d at 880.  If such services were

performed by a family member, however, they are presumed to be

gratuitous.  Brittin, 247 Ill. App. 3d at 760, 617 N.E.2d at 880.

          It has been said that quantum meruit claims against an

estate should be scrutinized with care (In re Estate of Rollins,

269 Ill. App. 3d 261, 273, 645 N.E.2d 1026, 1034 (1995)), and

that a claimant has the burden of proving a claim against an

estate by clear and convincing evidence (In re Estate of Milborn,

122 Ill. App. 3d 688, 690-91, 461 N.E.2d 1075, 1078 (1984); but

cf. In re Estate of Sewart, 274 Ill. App. 3d 298, 309, 652 N.E.2d

1151, 1159-60 (1995); In re Estate of Brumshagen, 27 Ill. App. 2d

14, 22, 169 N.E.2d 112, 116 (1960) (preponderance of the evidence

standard applied)).  Petitioner's evidence was sketchy, largely

because of the restrictions placed on his testimony pursuant to

the Dead-Man's Act, but the evidence was nevertheless sufficient

to raise a presumption in favor of recovery.

          Petitioner established that he was not a relative of

decedent, he performed a valuable service for decedent, he

intended to be paid for his work, and decedent knowingly and

voluntarily accepted the benefit of petitioner's labor and

equipment.  Nothing in the record contradicts petitioner's

evidence, nor is there any indication that the trial court found

the testimony not credible.

          Respondents contend, however, that petitioner failed to

establish (1) a reasonable expectation to be paid, (2) the nature

of the services rendered, and (3) the reasonable value of the

services.  We disagree.  First, as noted above, a presumption

arises that the parties intended payment under the facts present-

ed.  The facts that petitioner was a friend of decedent and that

it is "not unheard of" for farmers sometimes to help each other

out for free are insufficient to erase this presumption.  The

services provided were not trivial, and petitioner's heavy farm

equipment cost money to operate.  Although the presumption of

nongratuity may burst if the friendship is of such a quality to

be nearly familial (see Sewart, 274 Ill. App. 3d at 310-11, 652

N.E.2d at 1160), the evidence here does not suggest that peti-

tioner and decedent shared anything more than a casual friend-

ship.  Second, the evidence was sufficient to establish that

petitioner harvested decedent's soybeans.  Petitioner's verified

claim stated that he harvested 110 acres, but his mother testi-

fied that he harvested approximately 160 acres.  Had the Dead-

Man's Act not barred petitioner from testifying personally, any

confusion about the exact number of acres harvested might have

been removed.  Respondents cannot complain that the proof exceed-

ed the claim.  It is true that petitioner failed to establish

that he hauled any corn for decedent.  However, the $110 sought

for corn hauling represents but a small fraction of the claim. 

Petitioner's entire claim should not fail because of this lack of

proof.  Finally, petitioner's evidence regarding the value of his

services was sufficient for the court to determine a reasonable

amount of compensation due.

          We therefore reverse the dismissal.  On remand, the

trial court is directed to proceed as if it denied respondent's

motion.

          As we reverse and remand on the first issue, we need

not consider whether Beverly Bitner's testimony regarding dece-

dent's statements to her were properly excluded as hearsay.  If

Beverly Bitner's testimony was not excluded under the Dead- Man's

Act, however, the testimony would appear to come in as an admis-

sion of a party opponent, an exception to the hearsay rule.  If

Beverly Bitner was attempting to relate statements made by

decedent to plaintiff, of which she had no firsthand knowledge,

the objection was properly sustained.

          Reversed and remanded.

          GREEN and KNECHT, JJ., concur.