NO. 4-01-1007

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In Re: the Estate of ZOE TEMPLETON, Deceased,

CAROL COFFEY and CHRISTINE CHAMBERS GRAVES,

          Claimants-Appellants,

          v.

The ESTATE OF ZOE TEMPLETON, Deceased,

          Respondent-Appellee.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Coles County

No. 99P116

Honorable

Ashton C. Waller,

Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE MYERSCOUGH delivered the opinion of the court:

In May 2000, claimants, Carol Coffey and Christine Chambers Graves, filed separate claims against the estate of their deceased aunt, Zoe Templeton, for services provided during Zoe's life.  Bonnie Gibbs, Zoe's daughter and executrix of her estate, denied the claims in June 2000.  In May 2001, the trial court conducted a bench trial, and in October 2001, the trial court entered judgment in favor of the estate and against Carol and Christine.  Carol and Christine appeal, arguing that the trial court erred in holding that they failed to overcome the presumption that their services for their aunt Zoe were gratuitous.  We reverse and remand with directions.

I. BACKGROUND

Zoe Templeton was born in 1912.  She had three children, Bonnie Gibbs, Betty Mann, and William Templeton, all of whom resided in Mount Vernon, Indiana.  Zoe had two sisters, Thelma Bayes and Wanda Furman, who was Carol and Christine's mother.  Zoe separated from her husband in late 1982 and moved from Indiana to Thelma's home in Charleston, Illinois.

In 1994, Wanda moved in with Zoe and Thelma.  The three sisters split expenses equally until February 1997, when Thelma conveyed the home to Christine and Christine's husband, Steven, for them to remodel the house.  Christine and Steven moved into the home shortly thereafter.  As consideration, Christine and Steven agreed to allow Thelma and Wanda to live in the home without rent as long as they wanted and were able.  Thelma died in July 1997.

Wanda testified that Zoe was not a party to the transaction because Zoe was in a better financial situation.  Zoe had the means to provide for herself, and she continued to own her former Indiana home, in which Bonnie lived.  In March 1998, Wanda became Zoe's power of attorney because Zoe's hand tremors made writing difficult.  Wanda was responsible for paying Zoe's expenses.  Zoe paid one-half of the monthly utility bill.  Zoe also helped pay for Wanda's medication on a few occasions, and she paid approximately $20,000 to get Wanda a new car.

Christine and Steven sold their former home and used the proceeds to make several renovations with a total cost of approximately $60,000.  Christine and Steven considered Zoe's needs in making the renovations.  Zoe had difficulty breathing from heavy smoking, and she was unable to get into a bathtub. Christine and Steven converted a half bath into a handicapped-accessible large bath.  They also bought air purifiers and installed zoned heating and air conditioning.  

From July 1997 until Zoe's death in November 1999, Christine provided Zoe with a place to live, three meals a day, and clean laundry.  Zoe needed assistance to move around, and she used a walker or furniture to steady herself.  Bonnie, a certified nursing assistant, instructed Christine on caring for Zoe and provided her with a blood-pressure cuff, a stethoscope, and a suction machine.  Christine sat with Zoe for an estimated 24 hours per week because Zoe did not like to be alone.

From 1995 until 1999, Carol also assisted Zoe.  Carol estimated that she sat with Zoe for 24 hours per week as well.  Carol frequently helped Zoe with her contact lens, which often bothered Zoe.  Carol would remove the lens and reinsert it after rinsing or replacement.  Carol also drove Zoe on errands because  Zoe could no longer drive.  Carol and Christine did not set fees for these services or bill Zoe while she was alive.  Zoe never paid Carol or Christine for services.

In December 1999, the trial court admitted to probate Zoe's April 1998 will and April 1999 codicil.  Zoe's will left all of her property to her three children.  In May 2000, Carol and Christine filed claims against Zoe's estates totaling $70,037.66 and $33,328.57, respectively.  In June 2000, Bonnie, acting as Zoe's executrix, denied both claims.  In October 2000, Bonnie filed an inventory in this case showing that Zoe died possessing various Illinois farm properties in Gallatin and White Counties and $103,466 in personal property.  The inventory did not list any of the Indiana farm properties that Zoe specifically devised to each of her three children in her will.

In May 2001, the trial court conducted a bench trial.  Carol and Christine entered the evidence deposition of Joanne Barbee, Zoe's sister-in-law, into evidence.  She had a conversation with Zoe several months after June 1999 but some months before Zoe's death.  In her deposition, Joanne testified that Zoe indicated that she wanted Carol and Christine to be compensated for all they had done for her.  According to Joanne, Zoe said that all they needed to do was file a claim against her estate.  Joanne testified that Zoe had received compensation by filing a claim against the estate of Zoe's cousin, Doris Berry.

The trial court took judicial notice of In re Estate of Berry, No. 91-P-91 (Coles Co. Cir. Ct.), in which Zoe filed an uncontested claim for $9,945.  Thelma was the executrix.  The record shows that Zoe claimed the sum for "[s]ervices to decedent for cooking, home care, washing, ironing, [t]ransporta­tion[,] and shopping[,] all performed with expectation of payment.  Services rendered from December 19, 1988[,] to March 16, 1991[,] [at] 8 hours per day, 7 days per week at $85 per week for 117 weeks."

Wanda testified that she had a conversation with Zoe in late 1998 or 1999, wherein Zoe said that she wanted Carol and Christine to be compensated.  On the day of Zoe's death, Zoe patted the hospital bed and said, "'I don't want the girls to go without.'"  Wanda, Carol, and Christine were present.  Wanda testified that, as Zoe's power of attorney, she never received an invoice from either Carol or Christine for any services.

Carol and Christine submitted accountings of their respective claims.  However, they did not provide any records of their services, nor did they bill Zoe for services or rent while she was alive.  Christine claimed $54,600 for rent from July 1997 to October 1999, derived from the monthly charge of $1,950 for a single person in a double-occupancy room at Hammond Lane, a local nursing home.  Christine also sought $16,704 in sitting fees based on an estimated 24 hours per week from July 1997 through October 1999 at $6 per hour.

Carol claimed a $16,704 sitting fee based on the same estimates.  Carol further requested $10,693.44 for assistance with Zoe's contact lens an estimated 144 times; she valued each time at $74.26, based on what Zoe's doctor's office would charge for the service.  She next wanted compensation of $500 for driving Zoe on an estimated 100 errands, plus mileage of $180.  Finally, Carol claims $2,467.13 for missing 112.5 hours from work while caring for Zoe, based on her average hourly salary of $21.93.

Judy Lane, owner of Hammond Lane, testified at trial as to the monthly fees at her facility.  However, Lane never met Zoe and was not familiar with her needs.  Her staff did not administer treatments, monitor medications, or sit with residents.  She could arrange sitters for an extra fee of $5.15 per hour, and sitters could provide services such as cleaning a contact lens.

In October 2001, the trial court issued an order and letter opinion finding in favor of the estate and denying Carol's and Christine's claims.  Specifically, the court found as follows:

"Carol and Christine have not proved that an express contract ever existed.  It is clear that Zoe, Carol[,] and Christine shared the knowledge that Zoe had successfully made a claim against her cousin's estate in 1991.  There is credible evidence that Zoe felt that Christine and Carol should be compensated for what they had done for her.  However[,] there is no evidence that she took any step to compensate them.  She made no promise to pay while she was alive.  No promissory expression can be found in anything she said or did.

Carol and Christine made no effort to keep a record of the services performed while [Z]oe was alive.  They never billed Zoe for the services.  Their claims are based on estimates put together after Zoe died.

The evidence presented does not overcome the presumption that the services were rendered gratuitously.  A contract implied in fact has not been proved.

Based on the evidence, a contract implied in law should not be imposed by the court.  This equitable remedy is imposed to avoid unjust enrichment.  It rests on a presumption that a person accepting services should pay the reasonable value of those services to the person providing them.  The evidence establishing that the services were performed and the reasonable value of them must be clear and convincing.  The evidence presented does not meet that standard.  In this case the presumption that a person accepting services should pay for them does not overcome the presumption that a family member who furnishes services does so gratuitously." 

This appeal followed.

II. ANALYSIS

Carol and Christine argue that the trial court's decision was against the manifest weight of the evidence.  We defer to the trial court's finding that the evidence was insufficient to overcome the presumption of gratuitous service unless that finding was against the manifest weight of the evidence.  See 
In re Estate of Miller
, 334 Ill. App. 3d 692, 699, 778 N.E.2d 262, 268 (2002).

In awarding judgment against Carol and Christine on their claims, the trial court applied the presumption that a person who furnishes services to a family member does so gratuitously.  See 
In re Estate of Devoy
, 231 Ill. App. 3d 883, 889, 596 N.E.2d 1339, 1343 (1992).  The presumption may be rebutted by sufficient evidence of a contract, express or implied, to negate any presumption that the services were performed gratuitously.  
Estate of Jesmer v. Rohlev
, 241 Ill. App. 3d 798, 803, 609 N.E.2d 816, 820 (1993).  The amount of evidence sufficient to rebut the presumption of gratuity depends on the facts of each case; the presumption diminishes in direct proportion to the remoteness of the degree and character of the family relationship and the character of the duties performed.  
In re Estate of Dal Paos
, 118 Ill. App. 2d 235, 240, 254 N.E.2d 300, 303 (1969).

Carol and Christine each claimed that they sat with their aunt Zoe for an estimated 24 hours a week over a 27-month period.  Christine asserted that she also provided Zoe with housing, meals, and laundry.  Carol claimed that she frequently cleaned Zoe's contact lens and drove Zoe on errands.  The record contains evidence that (1) Zoe stated that she intended Carol and Christine to be compensated for their caregiving and (2) Carol and Christine were to file a claim in Zoe's estate as Zoe had done in Doris Berry's estate.

Considering the evidence of Zoe's statements along with the degree of the family relationship involved and the character of the duties performed, we determine that Carol and Christine presented sufficient evidence to rebut the presumption that the services that they performed for their aunt Zoe were gratuitous.  Illinois generally follows the Thayer "bursting-bubble" hypothesis on presumptions.  See 
Franciscan Sisters Health Care Corp. v. Dean
, 95 Ill. 2d 452, 462-63, 
448 N.E.2d 872, 877 (1983).  The trial court should have decided whether Carol and Christine proved by clear and convincing evidence facts giving rise to an implied contract (
In re Estate of Teall
, 329 Ill. App. 3d 83, 89, 768 N.E.2d 124, 130 (2002)), without resort to any presumption.  Therefore, the trial court's decision was against the manifest weight of the evidence.

As guidance on remand, we note that the presumption of expectation of compensation for services knowingly and voluntarily accepted by a decedent during the decedent's lifetime does not apply because it concerns only nonfamily claimants.  
In re Estate of Brittin
, 247 Ill. App. 3d 756, 760, 617 N.E.2d 877, 880 (1993).

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand with directions for the trial court to consider whether either claimant proved an implied contract and, if so, the reasonable value of the services rendered.

Reversed and remanded with directions.

COOK, J., concurs.

TURNER, J., specially concurs.

JUSTICE TURNER, specially concurring:

The majority concludes Carol and Christine presented sufficient evidence to rebut the presumption the services they performed were gratuitous.  I agree.  I write separately to emphasize that should the trial court ultimately determine claimants are entitled to recover, their recovery should be limited to the reasonable value of the services performed.